UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BENJAMIN MARCUS HOMES, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No: |
| | ) | |
| v. | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| McCLOSKEY LAND DEVELOPMENT | ) | |
| CO. INC., JOSEPH J. McCLOSKEY, THE | ) | |
| PETERS TOWNSHIP LAND COMPANY, | ) | |
| LLC, HOWARD HANNA COMPANY, | ) | |
| DANIELLE M. MACH, THOMAS J. | ) | |
| MOAKLER, and DR. OLIVER W. | ) | |
| HERNDON and LINDA A. HERNDON, | ) | |
| husband and wife, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## COMPLAINT

Plaintiff, Benjamin Marcus Homes, LLC, by and through its undersigned counsel, Blumling & Gusky, LLP, files its Complaint against defendants, McCloskey Land Development Co. Inc, Joseph J. McCloskey, The Peters Township Land Company, LLC, Howard Hanna Company, Danielle M. Mach, Thomas J. Moakler, and Dr. Oliver W. Herndon and Linda A. Herndon, husband and wife, and in support thereof, states as follows:

### BACKGROUND AND PARTIES

1.      Plaintiff, Benjamin Marcus Homes, LLC ("BMH"), is a Pennsylvania limited liability company with its principal place of business located at 102 Windsor Court, Venetia, Washington County, Pennsylvania, 15367.

2.      BMH conducts business as a designer and builder of custom homes, mainly in the area of Venetia, Washington County, Pennsylvania.

3.      BMH is also the developer of certain real property known as The Hamlet of Springdale Development in Venetia, Washington County, Pennsylvania.

4.      In 2008, BMH created an original design for a model home known as Lot 30 English Manor.

5.      In 2008, BMH constructed Lot 30 English Manor at 305 Buckingham Drive in The Hamlet of Springdale Development owned by BMH.

6.      BMH designed Lot 30 English Manor to be BMH's signature home that would attract buyers to The Hamlet of Springdale Development.

7.      Lot 30 English Manor is proprietary and provides BMH with a competitive advantage over other developers and custom home builders.

8.      Defendant, McCloskey Land Development Co. Inc. ("McCloskey Land"), is a Pennsylvania corporation with its principal place of business located at 681 Churchill Road, Finleyville, Washington County, Pennsylvania 15332.

9.      McCloskey Land conducts business as a designer and builder of custom homes, mainly in the area of Washington County, Pennsylvania.

10.     McCloskey Land is a competitor of BMH.

11.     Defendant, Joseph J. McCloskey ("McCloskey"), is an individual residing at 135 Church Road, Scenery Hill, Washington County, Pennsylvania 15360.

12.     McCloskey is an officer of McCloskey Land.

13.     Upon information and belief, the actions or inactions of McCloskey Land were, at all times relevant hereto, personally performed by McCloskey for his personal financial benefit and/or for the financial benefit of his employer, McCloskey Land. (For which reason, McCloskey Land and McCloskey are referred to herein collectively as "McCloskey").

14.     Defendant, The Peters Township Land Company, LLC ("Peters Land Company"), is a Pennsylvania limited liability company with its principal place of business located at 1 Forsythe Road, Suite 5, Presto, Allegheny County, Pennsylvania 15142.

15.     Peters Land Company is the developer of certain real property known as Anthony Farms Development in McMurray, Washington County, Pennsylvania.

16.     Peters Land Company is a competitor of BMH.

17.     Defendant, Howard Hanna Company ("Howard Hanna"), is a Pennsylvania corporation with its principal place of business located at 119 Gamma Drive, Pittsburgh, Allegheny County, Pennsylvania 15238.

18.     Howard Hanna conducts business as a licensed real estate broker in Pennsylvania.

19.     Defendant, Danielle M. Mach ("Mach"), is an individual residing at 4030 Breckenridge Drive, Presto, Allegheny County, Pennsylvania 15142.

20.     Mach conducts business as a licensed real estate salesperson in Pennsylvania.

21.     Defendant, Thomas J. Moakler ("Moakler"), is an individual residing at 3239 Arapahoe Road, Pittsburgh, Allegheny County, Pennsylvania 15241.

22.     Moakler conducts business as a licensed architect in Pennsylvania.

23.     Defendants, Dr. Oliver W. Herndon and Linda A. Herndon (the "Herndons"), husband and wife, are individuals residing at 103 Bradford Cove, Venetia, Washington County, Pennsylvania 15367.

## JURISDICTION AND VENUE

24.     This action for copyright infringement is brought pursuant to the Copyright Act of 1976, 17 U.S.C. §§ 101, *et seq.*

25.     This Court has subject matter jurisdiction over this civil action pursuant to 28 U.S.C. § 1338 (original jurisdiction over claims for copyright infringement).

26.     Venue is proper with this Court pursuant to 28 U.S.C. §§ 1400(a) (venue for civil actions regarding copyrights) and 1391(c) (residence of defendant corporations for venue purposes) because this district is where the defendants or their agents reside or may be found.

27.     All conditions precedent to BMH's right to assert the claims below and the relief requested herein have occurred or have been performed.

**COUNT I:**
**COPYRIGHT INFRINGEMENT**
**(BMH v. Defendants)**

28.     All of the foregoing paragraphs are incorporated herein by reference.

29.     BMH owns the copyrights to certain plans and elevation drawings of Lot 30 English Manor. (True and correct copies of such plans and elevation drawings are attached hereto and incorporated by reference herein as **Exhibits "A" through "E"**).

30.     BMH also owns the copyrights to the architectural work of Lot 30 English Manor. (A true and correct photograph of the front of the architectural work is attached hereto and incorporated by reference herein as **Exhibit "F"**).

31.     BMH registered its copyrights to the plans and elevation drawings (the "Copyrighted Drawings"). (A true and correct copy of the U.S. Copyright Office Certificate of Registration No. VAu 1-070-602 for the Copyrighted Drawings is attached hereto and incorporated by reference herein as **Exhibit "G"**).

32.     BMH registered its copyrights to the architectural work (the "Copyrighted House"). (A true and correct copy of the U.S. Copyright Office Certificate of Registration No.

VAu 1-069-006 for the Copyrighted House is attached hereto and incorporated by reference herein as **Exhibit "H"**).

33.     The Copyrighted Drawings and the Copyrighted House are collectively referred to hereinafter as the "Copyrighted Works".

34.     Upon information and belief, the Herndons saw BMH's Copyrighted House and desired to have a house built nearly identical to BMH's Copyrighted House.

35.     Upon information and belief, rather than buying such house from BMH and building it in The Springdale of Hamlet Development owned by BMH, the Herndons wanted it to be built in the Anthony Farms Development owned by Peters Land Company.

36.     Upon information and belief, the Herndons wanted their new house to be built by McCloskey because McCloskey had previously built a house for the Herndons.

37.     The Herndons are in the process of having a house built at 311 Braeburn Drive (the "Infringing House") in the Anthony Farm Development that is nearly identical to BMH's Copyrighted House. (A true and correct photograph comparing the front (flipped) of BMH's Copyrighted House and the front of the Infringing House is attached hereto and incorporated by reference herein as **Exhibit "I"**).

38.     Upon information and belief, the Herndons, McCloskey, Peters Land Company, Howard Hanna, Mach, and/or Moakler (collectively the "Defendants") willfully conspired with each other to facilitate the construction of the Infringing House.

39.     84 Lumber Company, LP, ("84 Lumber") supplies building materials to BMH.

40.     Upon information and belief, 84 Lumber had in its possession copies of BMH's Copyrighted Drawings in order to supply BMH with certain building materials that complied with the specifications in the Copyrighted Drawings.

41.     Upon information and belief, McCloskey willfully obtained copies of BMH's Copyrighted Drawings from 84 Lumber without BMH's permission, authorization, or consent, so that Defendants could facilitate the copying of BMH's Copyrighted Works.

42.     Upon information and belief, McCloskey willfully copied BMH's Copyrighted Drawings, and willfully altered such drawings by removing the title blocks from the copies of BMH's Copyrighted Drawings and making handwritten notes on such drawings. (True and correct copies of the modified drawings are attached hereto and incorporated by reference herein as **Exhibit "J" through "L"**).

43.     Upon information and belief, McCloskey willfully provided Moakler with copies of these modified drawings to create a new set of drawings (the "Infringing Drawings") to be used for the construction of the Infringing House. (True and correct copies of the Infringing Drawings are attached hereto and incorporated by reference herein as **Exhibit "M" through "S"**).

44.     Upon information and belief, Moakler copied or otherwise used the modified copies of BMH's Copyrighted Drawings to create the Infringing Drawings and facilitate the construction of the Infringing House.

45.     Upon information and belief, Mach is the daughter of the owner of Peters Land Company.

46.     Upon information and belief, Mach is the exclusive real estate salesperson for the transaction involving the purchase and sale of the Infringing House.

47.     Howard Hanna, at all times relevant hereto, held out Mach as its sales agent.

48.     Howard Hanna is the sole real estate broker listed on Mach's real estate license.

49.     Howard Hanna had, at all times relevant hereto, the right and ability to supervise the activities of its sales agent, Mach.

50.     Upon information and belief, Mach used her actual or apparent authority as a sales agent for Howard Hanna to enter BMH's Copyrighted House and visually inspect and take photographs of such property without BMH's permission, authorization or consent.

51.     Upon information and belief, the photographs taken by Mach and the information gleaned from her visual inspection of BMH's Copyrighted House were used in connection with the creation of the Infringing Drawings and the construction of the Infringing House.

52.     Howard Hanna is vicariously liable for the acts of its agent, Mach.

53.     Upon information and belief, the Defendants willfully conspired or knew or had reason to know that BMH's Copyrighted Drawings and photographs of the BMH's Copyrighted House were going to be obtained and used to create the Infringing Drawings and to facilitate the construction of the Infringing House.

54.     As a result of the above-mentioned individual and collective acts of Defendants and their actual or apparent agents and representatives, Defendants willfully infringed or willfully contributed to the infringement of BMH's Copyrighted Works by making or causing to be made the Infringing Drawings and constructing or causing to be constructed the Infringing House.

55.     Defendants and their actual or apparent agents and representatives willfully infringed or willfully contributed to the infringement of BMH's Copyrighted Works for purposes of direct financial benefit to Defendants.

56.     BMH notified Defendants that Defendants have infringed BMH's Copyrighted Works and requested that Defendants immediately cease and desist their infringing activities. (A

true and correct copy of the written notice is attached hereto and incorporated by reference herein as **Exhibit "T"**).

57.     Despite BMH's notice and request, Defendants, upon information and belief, have continued to willfully infringe upon BMH's Copyrighted Works by, among other things, proceeding with the design, construction, and sale of the Infringing House and using it in commercial promotions and advertisements.

58.     The unauthorized reproduction and modification of BMH's Copyrighted Drawings and the unauthorized design, construction, and purchase and sale by Defendants of the Infringing House has caused harm and injury to BMH and constitutes violations of BMH's exclusive rights as copyright owner under the Copyright Act, and thus, constitutes copyright infringement.

59.     In addition, upon information and belief, Peters Land Company and McCloskey, in connection with promoting or advertising their goods and services to the public, have falsely designated or represented that the Infringing House was their creation rather than an unauthorized copy of BMH's Copyrighted House.

60.     The act of passing off the Infringing House by the McCloskey and the Peters Land Company as their own original work is also copyright infringement.

61.     As a result of the infringing marketing and sale of the Infringing House, BMH has suffered damages and has been deprived of the revenues to which BMH is entitled on the sale of his originally designed Copyrighted Works.

WHEREFORE, BMH demands that:

   (a)   Defendants, at their sole cost and expense, be required to make changes to the Infringing House that are acceptable to BMH;

(b)   Defendants account for and pay as damages to BMH all profits and advantages gained from infringing BMH's Copyrighted Works (but no less than the statutory minimum);

(c)   Defendants pay as damages to BMH what a willing buyer would have been reasonably been required to pay BMH to purchase a license to use BMH's Copyrighted Drawings (but no less than the statutory minimum);

(d)   Defendants pay as damages to BMH the amount of profit that BMH would have made by constructing and selling its Copyrighted House to a willing buyer for a reasonable purchase price (but no less than the statutory minimum);

(e)   Defendants pay interest on the damages awarded to BMH from the date of infringement;

(f)   Defendants pay the attorneys' fees and costs incurred by BMH in having to enforce and protect its copyright interests in the Copyrighted Works;

(g)   Defendants and their agents be permanently enjoined from ever making or causing to be made copies or derivatives of BMH's Copyrighted Works;

(h)   Defendants and their agents be required to immediately deliver to BMH for impoundment all originals and copies of photographs of the Copyrighted House; all copies of the Copyrighted Drawings; all originals and copies of the Infringing Drawings; and all originals and copies of all other drawings or documents derived from the Copyrighted Drawings or the Infringing Drawings;

(i)   Defendants and their agents be permanently enjoined from making or disposing of, by sale or otherwise, any photographs of the Copyrighted House; any copies of the Copyrighted Drawings; any copies of the Infringing Drawings; and any copies

of other drawings or documents derived from the Copyright Drawings or the Infringing Drawings;

(j)    Defendants be permanently enjoined from promoting or advertising the Infringing House as their own design;

(k)    Defendants be forever required to disclose in promotions or advertisements relating to the Infringing House that the Infringing House was designed by BMH;

(l)    Defendants be required, so long as Herndons live in the Infringing House, a reasonably-sized sign in the front yard that discloses that the Infringing House was designed by BMH;

(m)    BMH be awarded any other relief that is deemed to be just and appropriate.

## COUNT II:
## VIOLATION OF THE DIGITAL MILLENIUM COPYRIGHT ACT
### (BMH v. McCloskey)

62.    All of the foregoing paragraphs are incorporated herein by reference.

63.    The title blocks on BMH's Copyrighted Drawings are "copyright management information" within Section 1202 of the Digital Millenium Copyright Act ("DMCA"), 17 U.S.C. §§ 1201, *et seq.*

64.    As stated above, upon information and belief, McCloskey removed the title blocks from copies of BMH's Copyrighted Drawings.

65.    McCloskey removed the title blocks without the permission, authority or consent of BMH.

66.    McCloskey removed the title blocks intentionally or willfully.

67. McCloskey removed the title blocks for purposes of commercial advantage or private financial gain.

68. McCloskey distributed copies of the altered drawings knowing that the title blocks had been removed without authority of BMH.

69. McCloskey distributed copies of the altered drawings knowingly or with having reasonable grounds to know that it will induce, enable, facilitate, or conceal an infringement of BMH's rights under Copyright Law.

70. McCloskey's actions constitute a violation of Section 1202 of the DMCA.

71. McCloskey's actions caused BMH to suffer damages as previously described.

WHEREFORE, BMH demands that:

    (a) Defendants, at their sole cost and expense, be required to make changes to the Infringing House that are acceptable to BMH;

    (b) Defendants account for and pay as damages to BMH all profits and advantages gained from infringing BMH's Copyrighted Works (but no less than the statutory minimum);

    (c) Defendants pay as damages to BMH what a willing buyer would have been reasonably been required to pay BMH to purchase a license to use BMH's Copyrighted Drawings (but no less than the statutory minimum);

    (d) Defendants pay as damages to BMH the amount of profit that BMH would have made by constructing and selling its Copyrighted House to a willing buyer for a reasonable purchase price (but no less than the statutory minimum);

    (e) Defendants pay interest on the damages awarded to BMH from the date of infringement;

(f)   Defendants pay the attorneys' fees and costs incurred by BMH in having to enforce and protect its copyright interests in the Copyrighted Works;

(g)   Defendants and their agents be permanently enjoined from ever making or causing to be made copies or derivatives of BMH's Copyrighted Works;

(h)   Defendants and their agents be required to immediately deliver to BMH for impoundment all originals and copies of photographs of the Copyrighted House; all copies of the Copyrighted Drawings; all originals and copies of the Infringing Drawings; and all originals and copies of all other drawings or documents derived from the Copyrighted Drawings or the Infringing Drawings;

(i)   Defendants and their agents be permanently enjoined from making or disposing of, by sale or otherwise, any photographs of the Copyrighted House; any copies of the Copyrighted Drawings; any copies of the Infringing Drawings; and any copies of other drawings or documents derived from the Copyright Drawings or the Infringing Drawings;

(j)   Defendants be permanently enjoined from promoting or advertising the Infringing House as their own design;

(k)   Defendants be forever required to disclose in promotions or advertisements relating to the Infringing House that the Infringing House was designed by BMH;

(l)   Defendants be required, so long as Herndons live in the Infringing House, a reasonably-sized sign in the front yard that discloses that the Infringing House was designed by BMH;

(m)   BMH be awarded any other relief that is deemed to be just and appropriate.

## JURY TRIAL DEMANDED

Respectfully submitted,

**BLUMLING & GUSKY, LLP**

By:     */s/ Brian W. Ashbaugh*
        Brian W. Ashbaugh, Esquire
        PA I.D. No. 26323

        */s/ Jeffrey K. Sassic*
        Jeffrey K. Sassic, Esquire
        PA I.D. No. 202327

        1200 Koppers Building
        436 Seventh Avenue
        Pittsburgh, PA 15219
        Tel:  (412) 227-2500
        Fax: (412) 227-2050

        bashbaugh@bglaw-llp.com
        jsassic@bglaw-llp.com

        *Counsel for Plaintiff,*
        *Benjamin Marcus Homes, LLC*